BENNETT *v*. STATE.

Opinion delivered December 21, 1901.

1. EVIDENCE—DECLARATION OF ACCUSED.—On a prosecution for the larceny of a horse which defendant had taken from the range and exercised acts of ownership over, proof that he said that the horse was an estray, and that he refused to sell him, is inadmissible to prove his innocence. (Page 46.)

2. LARCENY—INSTRUCTION.—An instruction that if the horse alleged to have been stolen "was running at large, and regarded as an estray in the neighborhood," and if the jury "find from the evidence that defendant took possession of said horse or exercised such ownership over him as owners of live stock usually exercise over same, with intent to steal said horse, they will find defendant guilty," is not misleading as authorizing a finding of guilty upon proof that defendant merely claimed the horse, without taking it into his possession, as the jury were directed to find from the evidence, and the only acts of ownership shown by the evidence were the bridling and leading the horse from the range to defendant's home, and there confining and using it under claim of ownership. (Page 46.)

Appeal from Poinsett Circuit Court.

FELIX G. TAYLOR, Judge.

Affirmed.

STATEMENT BY THE COURT.

W. W. Bennett was indicted for larceny, alleged to have been committed by the defendant unlawfully and feloniously stealing, taking and carrying away one horse, the property of Henry Sullins. He was tried and convicted, and his punishment was fixed at imprisonment in the state penitentiary for five years.

Evidence was adduced in the trial tending to prove, substantially, the following facts:

Henry Sullins was the owner of a young gray stallion. This animal ran on the range near his owner's place of residence until he was about two years old, and in the early part of the spring of 1897 ran near a mill a few miles above the same place. Sullins saw him "every few days" until the latter part of July, 1897, when

he disappeared. About that time the defendant, Bennett, was seen riding a horse and leading the said stallion in the direction of his home, and in the fall of 1898 was seen riding him, and in December of the same year was heard claiming him. Sullins hunted for, but did not find, his missing horse until May, 1899, when a man named White told him his horse was at defendant's. when he went to Bennett's farm, and found his horse there in possession of a man named Hall, who told him that the defendant had "taken him up." . Previous to this, in April, 1899, J. A. Cash accompanied the defendant to his horse lot to look at a mare whose foot was hurt, and while there he saw Sullins' horse in a stable. and the defendant asked him what he would give him for the stallion, and, Cash declining to make any offer, the defendant said, "if he did not dispose of him, he would castrate him, and make a saddle pony out of him." About the same time Dee Sullivan saw the same gray stallion in a lot on the defendant's farm.

In the course of the trial the defendant offered the evidence of William Herold and several others to the effect that defendant, in the spring of 1899, said that the horse was an estray, and on that account refused to sell him, which was rejected by the court, and the defendant excepted. At this time the defendant .proved, or offered to prove, by the same witnesses, that the horse was not in his possession at the time these statements were made.

The court instructed the jury as follows:

"(1) The defendant, W. W. Bennett, is indicted for the larceny of a horse which is alleged to be the property of Henry Sullins.

"(2) Larceny is the felonious stealing, taking, carrying, riding or driving away the personal property of another.

"(3) If you find from the evidence beyond a reasonable doubt that the defendant, in the county of Poinsett and state of Arkansas, within three years next before the finding of the indictment in this case, took possession of the horse described in the indictment, and that the said horse was the property of Henry Sullins, with the felonious intent to steal said horse, you will find him guilty. .

"(4) It is not necessary, to constitute larceny, that the property should be taken from the immediate possession of its owner. Therefore, if you find from the evidence beyond a reasonable doubt that the horse referred to in the indictment was the property of Henry Sullins, and that the defendant took said horse (if he did

take said horse) with the felonious intention to steal and convert the horse to his own use, you will find him guilty, although the horse may have been, at the time of the taking, at large, running on the range.

"(5)  The jury are instructed that, although you may find from the evidence that the defendant may have taken the horse in question, you cannot find him guilty unless you further find from the evidence beyond a reasonable doubt that the taking was with the felonious intent to steal, and that the horse was the property of Henry Sullins.

"(6)  If the jury believe that the horse in question was running at large, and regarded as an estray in the neighborhood, and they further find from the evidence beyond a reasonable doubt that defendant took possession of said horse, or exercised such ownership over him as owners of live stock usually exercise over same, with intent to steal said horse, they will find defendant guilty.

"(7)  If the jury find defendant guilty, they will assess his punishment in the state penitentiary for some period not less than five nor more than fifteen years.

"(8)  If, after considering all the evidence, you have a reasonable doubt of the guilt of defendant, you will return a verdict of not guilty."

And the defendant asked, and the court refused to give, the following instructions:

"(1)  Even though you may find from the evidence that defendant stated to parties that he owned the horse with the larceny of which he is charged, yet such statements, unaccompanied by possession of said horse at some time, are not sufficient to warrant a conviction; and if you find from the evidence that defendant never had possession of said horse, you will find him not guilty.

"(2)  Before you can find the defendant guilty, you must believe from the evidence beyond a reasonable doubt that some time within three years from the finding of the indictment, defendant took possession of said horse with the intent to steal, take or carry it away, and that said horse was the property of Sullins.

"(3)  Even though you find from the evidence beyond a reasonable doubt that defendant took possession of said horse, and that it was the property of Henry Sullins, yet if you believe from the evidence that defendant took possession of said horse for any other purpose than depriving the true owner of same, you will find him not guilty.

"(4)   A claim of ownership by defendant to the horse of Henry Sullins, without the taking of possession of same by him with the intent to steal, is not larceny."

*J. J. Mardis* and *L. C. Going,* for appellant.

The court erred in excluding testimony of witnesses Clark, Mann, Linsford, Knight and Herold.   21 Am. & Eng. Enc. Law, 115; 73 Ala. 23; 2 Car. & K. 550; 54 Ill. 404; 12 Ark. 782.   *Res gestae* in larceny extends over the period in which the accused held possession.   12 Am. & Eng. Enc. Law, 857.   The taking possession of another's property is an essential element of the crime. 13 Ark. 168; 32 Ark. 238.   If the horse was taken for any other purpose than to deprive the owner of same, it is no larceny.   60 Ark. 5; 50 Ark. 545.

*George W. Murphy, Attorney General,* for appellee.

BATTLE, J., (after stating the facts.)   The evidence offered by the defendant and rejected by the court was inadmissible.   He offered to prove that he said the horse stolen was an estray, and that he refused to sell him.   An estray is an animal running at large, the owner being unknown.   The evidence offered was not explanatory of any act of the defendant, but simply a denial of every act which needed explanation.   At the time he offered the rejected evidence, he adduced or offered to produce evidence to prove that he was not in possession of the horse at the time he said the horse was an estray and refused to sell.   The effect of the offer was an effort to prove his innocence by his own assertions.

Defendant objects to instruction numbered 6, because "there was no evidence of the way or manner in which owners of live stock in that community 'exercised acts of ownership' over their live stock, and under it the jury may have assumed that owners of live stock permitted it to run on the range, and the only exercise of ownership over the same was to claim it once a year, and that appellant, having claimed the horse, was therefore guilty of larceny."   In this the defendant is mistaken.   The court told the jury if they found "from the evidence beyond a reasonable doubt that defendant took possession of said horse, or exercised such ownership over him as owners of live stock usually exercise over same, with intent to steal said horse, they will find defendant guilty."   This instruction is tautological; "took possession" and "exercised such

ownership" being used to some extent in the same sense. The find-ing of the jury, under this instruction, must have been based upon the evidence. The only acts of ownership of the defendant shown by the evidence was the bridling and leading the horse from the range on which he ran to the home of the defendant, and there confining him in his lot, and riding him, and, while in such posses-sion, claiming him as his property. Inasmuch as the jury were directed to find from the evidence, the instruction must be under-stood as having reference only to the acts of ownership shown by the evidence. Then, again, the court instructed the jury that the ownership must be exercised with the intent to steal. No one can infer from a mere claim an intent to steal. No person seeking by that means alone to steal would be capable of committing larceny; and a man who would impute to a person capable of committing that crime an intent to steal, and find him guilty of larceny upon that evidence alone, would not be competent to serve as a juror.

According to the instructions of the court, in order to find the defendant guilty of larceny, it was necessary to find that the horse alleged to have been stolen was the property of Henry Sul-lins, and that the defendant took possession of him with the intent to steal. The defendant did not ask the court to instruct the jury that it was necessary to find anything in addition thereto in order to convict him of larceny. The instructions given substantially and in effect embraced all that is contained in the requests of the defendant. We see no reversible error in the instructions, when read as a whole, as they should have been.

Judgment affirmed.

WOOD and RIDDICK, JJ., dissent.

RIDDICK, J., (dissenting.) I regret that I am unable to agree to the judgment announced by the court, but a considera-tion of the case has convinced me that the learned circuit judge committed an error in instructing the jury, and that a new trial should be granted.

There was, as is stated in the opinion of the court, evidence tending to show that the defendant was seen leading the horse alleged to have been stolen away from its range, where it was accustomed to stay, and to show that the defendant had taken actual possession of the horse. But, on the other hand, there was evidence contradicting this evidence, and tending to show

that the horse was an estray, running at large near a farm owned by a brother of defendant; that the horse jumped into the field which Hall, a tenant of defendant's brother, was cultivating, and that Hall put him up and worked him, but that defendant never had possession of the horse, or exercised any act of ownership over him. Defendant testified further in his own behalf that he had never at any time either had possession of the horse or claimed to be owner of him. Under this evidence, the jury could have found that defendant claimed to be the owner of this stray horse, and had offered to sell or trade him, but had never taken possession of him, or had actual control of him in any way. It was possible that the jury might come to this conclusion on the facts. The law as to their duty in that event should have been made plain to them. But this is where I think the charge to the jury was defective and misleading. After giving correct definitions of the crime of larceny, and correctly instructing the jury on the law of larceny in a general way, the court comes in the sixth instruction to deal with the law as applied to the peculiar facts of this case, and says: "If the jury believe that the horse in question was running at large, and regarded as an estray in the neighborhood, and they further find from the evidence beyond a reasonable doubt that defendant took possession of said horse, or exercised such ownership over the same, with intent to steal, they will find defendant guilty." In other words, the judge, as I understand this instruction, told the jury that if the defendant took possession of the horse with intent to steal him, or exercised such ownership over him as owners of live stock usually exercise over the same, with intent to steal, they should find him guilty. There is nothing to show what was meant by the words "exercised such ownership over him as owners of live stock exercise over the same." The jury were left free to put such interpretation on the words as they chose to do, and to convict the defendant if in their opinion he had exercised such ownership over the horse as owners of live stock usually exercise over them.

Now, it is well known that there are considerable sections of this state in which the lands are wild and uninclosed, and where owners of live stock frequently allow them to run at large on the range with little control over them. They are sometimes bought and sold on the range, without any actual possession or delivery of the animals. And, as far as we know, this jury may have concluded that the mere claim of ownership, or an offer to sell the

horse on the part of the defendant, without any taking of posses-
sion, was sufficient to bring him within the scope of this instruc-
tion, and to justify a conviction. For this reason it seems to me that
this instruction was not only wrong, but under the facts of this case
it was likely to be prejudicial to the defendant.

After this instruction was given, counsel for defendant, in
order to prevent the jury from being misled by it, asked the court
to tell the jury explicitly that a claim of ownership, without a
taking of the horse by the defendant, was not sufficient to convict.
These instructions asked by the defendant are set out in the state-
ment of facts made by the court, and it is unnecessary to repeat
them here. It seems to me very plain that, having given the in-
structions above referred to, one or more of those asked by the de-
fendant should have been given, to make plain to the jury that a
mere claim of ownership or an offer to sell the horse by him was
not sufficient to convict when no caption or asportation was proved.
But the court refused all of these instructions, and no one can say
from the evidence and instructions whether the jury found a taking
of the horse as alleged in the indictment or not.

In referring to this point, the court, in its opinion, says that
no one can infer an attempt to steal from a mere claim of owner-
ship, and that a man who would find another guilty of larceny on
such evidence would be unworthy to sit on the jury. That may be
true, but men ignorant of the law often sit on the jury. It is for
this reason that judges are required to instruct the jury as to the
law applicable to the facts of the case. That the law is plain is no
excuse for refusing to give it when asked. The instruction asked
in this case in my opinion clearly stated the law, and should have
been given, and the refusal to do so, I think, was prejudicial error,
for which the judgment should be reversed.

WOOD, J., concurs in the dissenting opinion.